IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WHIPSTOCK NATURAL GAS SERVICES, LLC,

    Plaintiff,

v.                                    Civil Action No. 5:08CV145
                                                  (STAMP)
TRANS ENERGY, INC.

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

Whipstock Natural Gas Services, LLC ("Whipstock"), the plaintiff, filed this civil action against Trans Energy, Inc. ("Trans Energy"), the defendant, in the Western District of Pennsylvania for breach of contract and unjust enrichment. Thereafter, the defendant filed a motion to dismiss for improper venue. Judge Terrence F. McVerry of the Western District of Pennsylvania granted in part and denied in part the defendant's motion to dismiss and transferred the case to this Court. This Court granted the defendant leave to file a counterclaim for breach of contract and negligence.

This action currently comes before this Court on Whipstock's motion for summary judgment. Trans Energy filed a timely response, to which Whipstock filed a reply. For the reasons set forth below, this Court finds that Whipstock's motion for summary judgment must be denied.

II. Facts

Whipstock drills natural gas wells. Trans Energy owns and operates gas and property interests in West Virginia. On October 26, 2007, the parties entered into a written contract for Whipstock to drill a well on behalf of Trans Energy. As the contract was a "daywork" contract, Whipstock was to provide equipment and labor and to perform services as directed by Trans Energy and Trans Energy would pay Whipstock $13,500.00 per day for its work in drilling a natural gas well.

Whipstock commenced work on November 28, 2007. Whipstock's crew dropped pipe down the well hole a few days into the operation, which the defendant states led to increased costs to rehabilitate the well and to complete drilling using fluid drilling instead of air drilling. Additionally, Whipstock's crew dropped a metal bushing puller, or chain, down the well hole, which the defendant states resulted in the destruction of a drilling bit and lost time. The Whipstock crew attempted to "cover up" the metal bushing puller incident. Trans Energy states that on December 21, 2007, it terminated Whipstock.[1] In stating why it terminated the contract,

---

[1] Whipstock disputes this termination date. Whipstock states that billed work was completed on December 21, 2007. Whipstock states that it closed down work for the holiday period from December 22, 2007 to January 3, 2008. Thereafter, Whipstock states it continued to work until it was told to release the rig, which it states was after the employee death on January 6, 2008. Whipstock states that it filled out the last daily drilling report on January 7, 2008. As Trans Energy is the non-moving party, this Court views the facts in the light most favorable to Trans Energy.

Trans Energy cited not only the two incidents mentioned above where the Whipstock crew dropped items down the well hole, but also a general lack of experience and inadequacy and failure to make minimally acceptable progress. The defendant further points to the crew getting a drill pipe stuck and a Whipstock employee's death at the well.

Whipstock submitted invoices to Trans Energy dated December 31, 2007, in which it provided the total amount due as $293,268.00. On March 4, 2008, counsel for Trans Energy sent Whipstock a letter stating that Trans Energy believed the invoices included a "great deal of billed daywork that is mischaracterized and should not be billed." In choosing not to pay the invoice amount, Trans Energy explained in the letter its problems regarding Whipstock's performance issues including "extended periods of time in which little or no hole was made, a demonstrated lack of knowledge of drilling on fluid, the dropping of a chain downhole by Whipstock personnel, Whipstock's failure to acknowledge this impediment over days of unsuccessful operations, and the unfortunate fatal accident that subsequently occurred." In a deposition, James Abcouwer, Chief Executive Officer and President of Trans Energy, stated that he told Whipstock officials of his complaints with Whipstock's performance in drilling the well. On May 22, 2008, Trans Energy

issued a check to Whipstock in the amount of $150,000.00.[2] Trans Energy has not submitted the balance due on the invoice.

### III. Applicable Law

Under Federal Rule of Civil Procedure ("Rule") 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether

---

[2] Whipstock claims that Trans Energy paid it $148,450.00 on May 22, 2008

4

there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery.  See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992).  In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

### A. Choice of Law

Judge McVerry transferred this civil action to this Court pursuant to 28 U.S.C. § 1406(a). "[I]t is well settled in this circuit that 'a district court receiving a case under the mandatory transfer provisions of § 1406(a) must apply the law of the state in which it is held rather than the law of the transferor district court.'" Myelle v. Am. Cyanamid Co., 57 F.3d 411 (4th Cir. 1995) (quoting LaVay Corp. v. Dominion Fed. Savings & Loan Ass'n, 830 F.2d 522, 526 (4th Cir. 1987)). Accordingly, this Court will apply West Virginia's choice-of-law rules.

In this case, the contract at issue contains a choice-of-law provision selecting Pennsylvania law. Applying West Virginia choice of law rules to the provision, this Court finds that it must apply West Virginia substantive law. West Virginia courts will enforce a choice of law provision unless "the chosen state has no substantial relationship to the parties or the transaction, or when the application of the law of the chosen state would be contrary to a fundamental public policy of the state whose law would apply in the absence of a choice of laws provision." Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 293 (W. Va. 1981). In this case, the parties executed the contract in West Virginia. Further, the parties were to perform the contract in West Virginia. Whipstock is a Delaware limited liability corporation with its principal

place of business in Pennsylvania. Under West Virginia law, simply being headquartered in the chosen state is not enough to control the substantive law which applies in the case. See id. at 294 (finding that incorporation alone is not enough to support a choice of law clause). Accordingly, this Court, sitting in diversity, applies West Virginia law as the parties executed the contract at issue in West Virginia and the contract was to be performed in West Virginia. See Syl. Pt. 1 Michigan Nat. Bank v. Mattingly, 212 S.E.2d 754 (W. Va. 1975) ("The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State.").

B. Breach of Contract

The plaintiff contends that it is entitled to summary judgment because there is no standard of care and no performance standard expressed in the contract. It argues that there is no provision which provides a defense to Trans Energy from paying Whipstock its daily rate as defined in the contract. Whipstock further points to an assumption of risk provision, which states that the defendant will fully compensate the applicable rates of payment and will be solely responsible and assumes liability for all consequences of operations. The plaintiff also points to an early termination provision, which would have allowed the defendant to terminate the contract if Whipstock performed in a substandard fashion. Whipstock states that the contract provides that the defendant

shall pay all invoices within ten days after receipt or notify the plaintiff of a disputed item within fifteen days.

The essence of Trans Energy's argument is that a genuine issue of material fact exists as to whether Whipstock adequately performed its obligations under the contract. Trans Energy argues that Whipstock did not comply with the contract because it did not furnish appropriate equipment or labor for the task at hand and failed to perform the service the defendant directed it to perform. While Whipstock argues that Trans Energy did not exercise its right to terminate the contract, Trans Energy states that it terminated Whipstock on December 21, 2007. The defendant further contends that every contract under West Virginia law contains an implied promise to perform the work with diligence and in a workmanlike manner.

This Court finds that there is a genuine issue of material fact as to whether Whipstock fully performed its contractual obligations. Taking the facts in the light most favorable to the non-moving party, Trans Energy communicated its concerns with Whipstock's performance in the form of a letter dated March 4, 2008 from counsel to Whipstock and in a meeting that occurred after termination, but prior to the filing of this civil action. While perfect performance is not required on a contract, "a material failure of performance by one party discharges the other." W. Va. Human Rights Comm'n v. Smoot Coal Co., Inc., 412 S.E.2d 749, 754

8

(W. Va. 1991). Further, in West Virginia, contracts contain an implied promise to perform the work with diligence and in a workmanlike manner. Restatement (Second) of Contracts § 205; Smith v. Buege, 387 S.E.2d 109, 113 n.2. Because it is unclear at this time whether Whipstock may have materially violated the contract by not adequately performing its obligations, "the movant simply has not shown that it is entitled to judgment as a matter of law." Am. Bldg. Maint. Co. v. 1000 Water St. Condo. Ass'n, 9 F. Supp. 2d 1028, 1030 (E.D. Wisc. 1998).

C. <u>Unjust Enrichment</u>

In Count II, Whipstock claims that Trans Energy has been unjustly enriched at the expense of the plaintiff. Generally, a person who is unjustly enriched at the expense of another is required to make restitution. Restatement (First) of Restitution § 1 (1998). In West Virginia, "restitution damages from a claim of unjust enrichment are measured in terms of the benefit the plaintiff conferred to the defendant." Bright v. QSP, Inc., 20 F.3d 1300, 1311 (4th Cir. 1994) (quoting Dunlap v. Hinkle, 317 S.E.2d 508, 512 (1984)). In addition, "a person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit . . . where he has saved expense or loss." Id. (quoting Prudential Ins. Co. v. Couch, 376 S.E.2d 104, 109 (1988)).

9

Trans Energy argues that Whipstock's claim for unjust enrichment fails because it is incompatible with Whipstock's acknowledgment that an express contract governs the subject matter of the dispute. In West Virginia, "it is a well-rooted principle of contract law that '[a]n express contract and an implied contract, relating to the same subject matter, can not co-exist.'" Id. (quoting Case v. Shepherd, 84 S.E.2d 140, 144 (1954)). Because this Court finds that the express terms of the contract cover the identical subject matter alleged in Whipstock's complaint, Whipstock may not assert a claim for unjust enrichment and seek recovery on that claim in quasi contract or implied contract.

D. Accord and Satisfaction

The defendant, in its response to the motion for summary judgment, contends that the $150,000.00 check issued on May 22, 2008 and the plaintiff's acceptance of that check constituted an accord and satisfaction. In West Virginia, to prove an accord and satisfaction, Trans Energy most show:

> (1) Consideration to support an accord and satisfaction; (2) an offer of partial payment in full satisfaction of a disputed claim; and (3) acceptance of the partial payment by the creditor with knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all.

Syl. pt. 5, Painter v. Peavy, 451 S.E.2d 755 (W. Va. 1994) (quoting Syl. pt. 1, Charleston Urban Renewal Authority v. Stanley, 346 S.E.2d 740 (1985)).

The only evidence Trans Energy presents to this Court that Trans Energy Check #1816 was offered to fully settle Whipstock's claim is the check. Trans Energy has failed to provide evidence of the second or third prong of the test to prove accord and satisfaction. The check contains no words conspicuously stating that it is for full settlement of all claims. Further, there is no support in the record that Whipstock understood that the check was offered upon the condition that it would be accepted in full satisfaction of the claim. Therefore, Trans Energy's defense that its offer of payment and Whipstock's acceptance of that payment constituted an accord and satisfaction must fail.

## V. Conclusion

For the reasons stated above, this Court finds that the plaintiff's motion for summary judgment must be DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: March 4, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE